# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MID CONTINENT STEEL & WIRE INC.,

       Plaintiff-Appellee,

v.

UNITED STATES,

       Defendant-Appellee,

and

PT ENTERPRISE INC., PRO-TEAM COIL NAIL ENTERPRISE INC., UNICATCH INDUSTRIAL CO., LTD., WTA INTERNTIONAL CO., LTD., ZON MON CO., LTD., HOR LIANG INDUSTRIAL CORPORATION, PRESIDENT INDUSTRIAL INC., and LIANG CHYUAN INDUSTRIAL CO., LTD.,

       Defendants-Appellants

Appeal from the United States Court of International Trade in Case Nos. 15-cv-00213 and 15-cv-00220, Judge Claire R. Kelly

## DEFENDANTS-APPELLANTS OPPOSITION TO DEFENDANT-APPELLEE'S PARTIAL CONSENT MOTION TO TERMINATE APPEAL

Pursuant to Fed. R. App. Proc. 27(a)(3) and Fed. Cir. R. 27(a)(3), Defendant-Appellants PT Enterprise Inc., Pro-Team Coil Nail Enterprise Inc., Unicatch Industrial Co., Ltd., WTA International Co., Ltd., Zon Mon Co., Ltd., Hor Liang Industrial Corporation, President Industrial Inc., and Liang Chyuan Industrial Co., Ltd. (collectively "Taiwan Respondents") hereby respond to

Defendant-Appellee's ("Government") Motion For Voluntary Remand And Cancellation of Oral Argument (restyled by the Court as a Motion to Terminate Appeal), filed with this Court on November 21, 2025. Taiwan Respondents request that this Court: (1) deny the Government's motion for a voluntary remand (which would terminate this appeal); and (2) grant the Government's motion to cancel oral argument scheduled for December 1, 2025, and reschedule the oral argument for a later session.

I.     BACKGROUND

Taiwan Respondents commenced this action by summons at the Court of International Trade on August 6, 2015, with a Complaint filed on September 8, 2015. Among other claims, Taiwan Respondents asserted at Complaint paragraph 14 that the Department of Commerce ("Commerce") "did not determine the pooled standard deviation based on a weighted average of variances, but instead relied on a simple average of variances."

Taiwan Respondents filed their Rule 56.2 Motion for Judgment Upon the Agency Record, on February 26, 2016. *See* CIT Docket of Case 1:15-cv-00213, ECF 30. In their Memorandum of Law supporting this Motion Taiwan Respondents expressly stated that they "do{} not argue that Commerce's use of

2

Cohen's d and the DP analysis as a whole is *per se* contrary to the statute." Id. at 18. Taiwan Respondents continued:

> Indeed, we recognize that the Court has upheld Commerce's use of Cohen's d and certain aspects of the DP analysis, in general. *See generally Apex, supra*. However, the Department's application of its DP analysis to the specific facts of this case, without any adjustments, violated the criteria laid out in 19 U.S.C. § 1677f-1 and was otherwise unreasonable.

*Id*. Taiwan Respondents summarized their primary argument regarding the application of Cohen's *d* to the fact of this case as follows.

> When the Department calculated the pooled standard deviation in this case, it used a simple average of the standard deviations calculated for the test group and the base group instead of a weighted average based on either the number of sales or quantity in each group. The use of a simple average placed each group on equal footing despite the groups being different sizes which permitted the size of the group to have a distorting effect on the average. The use of a simple average in this instance was internally inconsistent, unreasonable and should be rejected.

*Id*. at 30. The question whether Commerce erred by using a simple average ("SA") to calculate the Cohen's *d* denominator has been the subject of six judicial decisions from March 23, 2017, through February 24, 2024.

In *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662 (Fed. Cir. 2019) ("*Mid Continent III*"), Appx449-458, this court reversed the Trial Court's decision in *Mid Continent Steel & Wire, Inc. v. United States*, 219 F.

3

Supp. 3d 1326 (CIT 2017) ("*Mid Continent I")*, Appx418-440,[1] which had affirmed Commerce's determination in the initial less than fair value ("LTFV") determination. Appx96.

In *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367 (Fed. Cir. 2022) ("*Mid Continent V*"), Appx974-984, this Court reversed the Trial Court's decision, in *Mid Continent Steel & Wire, Inc. v. United States*, 495 F. Supp. 3d 1298 (Ct. Int'l Trade 2021) ("*Mid Continent IV*"), Appx965-973, which had affirmed Commerce's first remand determination. Appx806-854.

In *Mid Continent Steel & Wire, Inc. v. United States*, 628 F. Supp. 3d 1316 (CIT 2023) ("*Mid Continent VI*"), Appx1719-1728, the Trial Court reversed Commerce's second remand determination, in which Commerce applied a new theory to support the SA methodology. Appx1659-1718. In its third remand determination, Commerce relied on yet another new theory to justify reliance on SA. Appx2401-2467. In *Mid Continent Steel & Wire, Inc. v. United States*, Court No. 15-213, Slip Op. 24-15 (CIT February 12, 2024) ("*Mid Continent VII*"), the Trial Court affirmed. Appx1-21. The trial court's February 12, 2024, decision

---

[1] *Mid Continent I* was affirmed after remand on an unrelated issue. *Mid Continent Steel & Wire, Inc. v. United States*, 273 F. Supp. 3d 1161 (CIT 2017) ("*Mid Continent II*"). Appx441-448.

currently is pending before this Court, with oral argument scheduled for December 1, 2025.

On April 22, 2025, and April 23, 2025, this Court issued decisions in *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025) ("*Marmen"*) and *Stupp Corp. v. United States*, No. 2023-1663, WL 1178392 (Fed. Cir. Apr. 23, 2025) ("*Stupp*"). As the Government correctly recognizes in its Motion for Voluntary Remand, these decisions *"*effectively invalidated the Cohen's *d* test as used in Commerce's differential pricing analysis." *See Marmen*, 134 F.4th at 1345-1348; *Stupp*, WL 1178392, at *2. On May 19, 2025, Commerce advised the public that in *Marmen* and *Stupp* this Court held that "it is unreasonable to use the current Cohen's d test when the Cohen's d test is applied to data that do not satisfy the statistical assumptions of normal distribution, equal variances, and sufficiently numerous data." *Alternatives to the Use of Cohen's d; Request for Comment*, 90 Fed. Reg. 21,277 (May 19, 2025). It solicited "public comment and information on potential alternative approaches for analyzing a respondent's U.S. prices under section 777A(d)(1)(B)(i) of the Act to identify if there is a pattern of prices for comparable merchandise that differ significantly among purchasers, regions, or periods of time." Parties had 10 days, until May 30, 2025, to submit comments.

On July 8, 2025, Commerce advised that it was revising the differential pricing analysis. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 30,050 (July 8, 2025). In its *Issues and Decision Memorandum*, Commerce stated that under this new test "to determine whether prices differ significantly," Commerce would "examine{} whether the weighted-average net price to a given purchaser, region or time period is within two percent of the weighted average net price to all other purchasers, regions or time periods." *Issues and Decision Memorandum For the Final Results of the Administrative Review of the Antidumping Duty Order On Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea; 2022-2023*, 90 ITADOC 30050 (July 8, 2025). Commerce continued:

> If the weighted-average net price to the given purchaser, region, or time period falls outside of the plus or minus two percent band around the weighted-average net price to all other purchasers, regions, or time periods, then the prices to that given purchaser, region, or time period are found to differ significantly and those sales to the given purchaser, region, or time period pass the price difference test.

Four months later, in November 2025, the Government advised Taiwan Respondents that it had decided to apply this new two percent test to the facts of this case, and on November 21, 2025, the Government filed its Motion for

6

Voluntary Remand. The reasons why this Court should deny the Government's Motion follow.

## II. ARGUMENT

First, the general legality of the Cohen's *d* methodology is not at issue in this litigation. *See* CIT Docket of Case 1:15-cv-00213, ECF 30 at 30, discussed *supra*, and Principal Brief of Defendant-Appellants, Appeal 2024-1556 (May 21, 2024) at 23 ("PT is not challenging Commerce's use of Cohen's *d* or the differential pricing analysis *in general* to determine whether targeted dumping is occurring and whether the criteria of 19 U.S.C. § 1677f-1(d)(1)(B) are satisfied."). Rather, Taiwan Respondents have consistently acknowledged that this test makes sense, and conforms to judicial precedent, provided that Commerce modifies its calculation methodology by basing the Cohen's *d* denominator on: (1) a weighted average of the standard deviations ("SD") of the Test subgroup and Comparison subgroup; or (2) a single standard deviation of all sales. *See* Taiwan Respondents, Appeal 2024-1556, Reply Brief (October 3, 2024) at 29. In the *Mid Continent* litigation, the courts have been presented with a binary choice as to how to apply the Cohen's *d* test to the facts in this case to arrive at a reasonable result which is supported by substantial evidence and conforms to law, and have not been asked to decide whether the test is generally applicable in all cases.

7

Second, while *Marmen* and *Stupp* determined that the Cohen's *d* test as administered by Commerce was fatally flawed, they did not address the general legality of the modified Cohen's *d* test subject to the *Mid Continent* litigation. Indeed, in *Mid Continent V*, this Court proposed, *sua sponte,* that Commerce rely on "the standard deviation of all the data for its denominator." *Mid Continent V*, Appx982. And then, in the penultimate paragraph of its opinion, this Court expressly held that in "further proceedings before Commerce," the agency "must either provide an adequate explanation for its choice of simple averaging or make a different choice, such as use of weighted averaging or use of the standard deviation for the entire population." Thus, the Court anticipated that Commerce ultimately would rely on one of the three methodologies under consideration.

Third, Taiwan Respondents challenge to Commerce's reliance on an SA denominator to establish whether there is a significant difference in prices between two groups of sales has been before the trial court and this Court for over ten years. The Government has had multiple opportunities to propose a differential pricing test which is based on substantial evidence and conforms to law. Instead, it refused to deviate from the SA methodology, and on each remand merely advanced a new reason why SA conformed to law. This Court has the discretion to consider the importance of ending lengthy litigation (in this case over 10 years) to achieve a just

8

result,[2] and to order an agency to accept one of two binary choices, rather than remand for further analysis.[3] The facts in this case support the need to act in this manner at this time.

Finally, while we recognize that this Court generally will not consider Commerce's proposed revised methodology before consideration by the trial court, the unique circumstances of this appeal reveal that such consideration is necessary to avoid protracted unnecessary litigation, leading to continuation of an Antidumping Duty ("ADD") Order which should never have been issued.[4] In its

---

[2] *Olympic Adhesives, Inc. v. United States,* 899 F.2d 1565, 1574–75 (Fed. Cir. 1990) ("Due to the passage of time, Extraco's 1981 exit from the production of bone glues, the lack of any evidence supporting the fictitious home market sales allegation, and in the interests of judicial economy, we remand this cause to the Court of International Trade with instructions to direct the ITA to assess antidumping duties in accord with the margins determined in the preliminary investigation for the years in question.").

[3] *CS Wind Vietnam Co. v. United States,* 832 F.3d 1367, 1374 (Fed. Cir. 2016) ("Because the reason Commerce offers for using the packed weights is without record support, we find Commerce's choice to be unsupported by substantial evidence. We therefore reverse the Court of International Trade's affirmance of that choice and direct Commerce to use the manufacturer-reported weights in its calculation.").

[4] *See* CIT Docket of Case 1:15-cv-00213, ECF 30 at 35 ("If Commerce had weight-averaged the base and test group standard deviations by either number of observations or sales quantities, and all other aspects of the Department's calculation were the same, the resulting dumping margin for PT under the mixed method would have been *de minimis*."); Principal Brief of Defendant-Appellants, Appeal 2024-1556 (May 21, 2024) at 62 ("Relying on WA, rather than SA, results in PT's margin being reduced from 2.16% percent to *de minimis*. Relying on the

post *Marmen/Stupp* decisions, Commerce has held that a two percent price differential is significant.

Taiwan Respondents recognize that this Court will not, in the context of this Appeal, decide whether Commerce's new two percent methodology conforms to law. Taiwan Respondents respectfully submit that it does not. But, regardless of its ultimate propriety, Commerce's new methodology is distinctly different than the Cohen's *d* test, which at the very least was a good faith attempt to determine whether there is a significant difference between prices in two groups of sales. In contrast, the two percent test appears to have been enacted to maximize reliance on the average-to-transaction, with zeroing, margin calculation methodology. Under this new test, Commerce will conclude that a company has target dumped when it sales prices to U.S. customers, regions and/or calendar quarters differ by merely two percent -  a standard which defines "significant" as meaning greater than "de minimis" - in direct contravention of the agency's prior policy – even if misguided – to at least attempt to construe the targeting statute to conform to law. While this Court ultimately will decide whether Commerce has the discretion to act in this

---

standard deviation of the entire population leads to a similar *de minimis* margin. . . Thus, Commerce's choice of methodology has 'a material impact on the results of the less-than-fair-value investigation.'").

manner, it should not allow Commerce to apply this dramatic change in policy to Taiwan Respondents transactions which occurred more than 10 years in the past.

For these reasons, Taiwan Respondents respectfully request that this Court: (1) deny the Government's motion for a voluntary remand; and (2) grant the Government's motion to cancel oral argument scheduled for December 1, 2025, and reschedule oral argument for a later session.

Respectfully submitted,

/s/ *Ned H. Marshak*
Ned H. Marshak
Andrew T. Schutz*

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000

*1201 New York Ave., NW, Ste 650
Washington, DC 20005

*Counsel to Defendants-Appellants*

Dated: November 24, 2025

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rules of Appellate Procedure 28.1(e)(2) and 32(a)(7)(B).

This response contains 2,248 words and complies with Federal Rule of Appellate Procedure 27(d)(2)(A).

This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).

This response has been prepared in a proportionally spaced type face using Word 2010 in Times New Roman 14 point font.

*/s/ Ned H. Marshak*
Ned H. Marshak